**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.C.**

**No. 21-0437** (Ohio County 14-CJA-82)

**MEMORANDUM DECISION**

Petitioner Mother M.K., by counsel Michael B. Baum, appeals the Circuit Court of Ohio County's April 28, 2021, order terminating her parental rights to J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion to modify disposition and instead terminating her parental rights to J.C.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2014, the DHHR filed a child abuse and neglect petition against petitioner after then-fourteen-year-old C.C. became pregnant as a result of petitioner allowing a twenty-six-year-old man to live in the home and sexually assault the child. C.C. also disclosed that she was sexually assaulted by three different men while in petitioner's care and that petitioner was aware of the extensive sexual abuse but did not act upon it. The DHHR also alleged that petitioner constantly moved the children from one man's house to another, failed to financially support the children, and exposed the children to extensive domestic violence with her various partners. The DHHR explained that one of petitioner's partners, K.M., was a convicted sex-offender and that despite knowledge of this, petitioner chose to stay in a relationship with him while having a young daughter, C.C., and petitioner later had a child, J.C., with him. Additionally, the DHHR alleged

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

that petitioner had an extensive past of domestic violence and cited that C.C.'s father was convicted of domestic battery in 2012 for injuring petitioner and C.C. According to the DHHR, there were a number of referrals made against petitioner through the years that included physical abuse, truancy, general neglect, lack of supervision, emotional abuse, and failure to protect the children from abuse and neglect. As a result of her extensive abuse, C.C. requested to be permanently placed out of petitioner's home.

At an adjudicatory hearing held in December of 2014, petitioner stipulated to the allegations contained in the petition. Specifically, petitioner stipulated that she exposed her children to abuse by inappropriate men and failed to address her mental health issues. The circuit court adjudicated petitioner as an abusing parent and granted her a post-adjudicatory improvement period. Pertinent to this appeal, a term of petitioner's improvement period required her to actively pursue treatment for her psychiatric conditions, maintain prescribed psychiatric medications, attend therapy, and provide accurate and recent mental health records to the multidisciplinary team ("MDT"). The court also required petitioner to undergo a psychological evaluation, which she completed in February of 2015. Dr. Edward Baker, a licensed psychologist, evaluated petitioner. During her interview, petitioner denied any responsibility for C.C.'s various sexual assaults while in her care. She also disclosed that then-seven-year-old J.C. had been hospitalized for exhibiting extremely aggressive and violent behaviors.

In July of 2015, petitioner voluntarily relinquished her parental rights to C.C. In December of 2015, the circuit court held a final dispositional hearing regarding petitioner's parental rights to J.C. Previously, the guardian filed a report vehemently arguing in favor of termination of petitioner's parental rights, citing petitioner's abject failure to protect the children from the various abusers and that a guardianship would be inappropriate for then-eight-year-old J.C. However, at the dispositional hearing, the guardian agreed with an alternative disposition due to the child's therapist's recommendation that petitioner could complete adequate therapy and potentially engage in family therapy with J.C. in the future. After petitioner waived her right to a contested dispositional hearing, the circuit court imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5) and granted permanent guardianship of J.C. to his maternal aunt and uncle via order entered on January 13, 2016.[2]

As the years passed, petitioner filed two motions to modify disposition, which were ultimately denied. In April of 2019, the guardian filed a motion to modify disposition requesting the termination of petitioner's parental rights. A few months later, petitioner filed another motion to modify disposition requesting termination of J.C.'s permanent guardianship and the reinstatement of her custodial rights. Petitioner filed a motion requesting the judge to conduct an in camera interview of J.C., which the judge granted. During J.C.'s in camera interview, the

---

[2]West Virginia Code § 49-4-604(c)(5) provides that

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

fourteen-year-old child explicitly stated, "I want this to end. I want permanency, I want this all settled, and I want to be adopted." However, J.C. also expressed wanting future contact with petitioner.

In March of 2021, the circuit court held a hearing on the motions to modify disposition. The guardian presented the testimony of a therapist who had been providing therapy sessions to J.C. for the previous seven years. The therapist stated that J.C. had matured and had a better understanding of the proceedings concerning his relationship with petitioner. The therapist explained that J.C. wanted more "control over his life and believes that termination of [petitioner's] parental rights would resolve that for him." She noted that J.C. had been aware of petitioner's previous attempts to "go back to court" to change custody of him, and he wanted stability without "repeated trips back to court." The therapist stated that J.C. felt that petitioner did not validate his feelings for wanting permanency and did not believe him when he said he did not want to cut off all contact with her. On cross-examination, the therapist stated that due to living in a chaotic environment with petitioner, J.C.'s mental health suffered. J.C. had been diagnosed with attention deficit disorder, adjustment disorder with mixed disturbance of emotions and conduct, and oppositional defiant disorder. She also stated that J.C. had expressed a desire for permanency and to be adopted since 2019 and that he independently stated that he wanted to speak to the judge. Finally, the therapist stated that because petitioner never showed that she completed extensive individual therapy with a treatment plan or arranged with her providers to initiate family therapy, she did not set up or provide family counseling for J.C. and petitioner.

Next, a CPS worker testified that petitioner's husband recently voluntarily relinquished his parental rights to a seven-year-old son, and that the DHHR would have concerns placing J.C. in the same home with him. After this testimony, C.C. testified that she remained close with J.C. She stated that she wanted no contact with petitioner and that if J.C. were returned to petitioner, it would negatively impact her ability to continue her sibling relationship with J.C.

Petitioner called her therapist who stated that petitioner had been his patient since February of 2019 for treatment of "panic disorder, anxiety, depression, and losses over her children." He explained that she presented only for these issues and he treated her only for these issues. He did not address petitioner's history of domestic violence with various partners, her proclivity for being in relationships with inappropriate men, any judgment impairment, or her general ability to parent. The therapist testified that the issues in the original abuse and neglect petition were "beyond [his] expertise," and had he known that she needed to address those issues, he would have referred her to another provider. When asked if he had reviewed any mental health records from petitioner's prior therapists since 2015, he answered that he had not.

Petitioner's husband testified that although petitioner was married to him, she initially left him and moved in with C.C.'s father around 2014. However, after C.C.'s father engaged in domestic violence with petitioner, she returned to living with her husband. He also stated that he voluntarily relinquished his parental rights to his own son in a prior child abuse and neglect case. Finally, petitioner testified that she had completed parenting education and therapy for the past six years, had maintained employment, and had been in a stable relationship with her husband. She stated that she had been taking medication and attending therapy since her diagnosis of depression and anxiety in 1993. She explained that her last physical contact with J.C. was in January of 2019,

after J.C.'s aunt stopped visits. When asked about J.C.'s statements to the judge in camera that he wished to stay with his aunt and uncle, petitioner answered that she wanted to hear the statement directly from J.C.

Having heard the evidence, the court stated that it previously conducted an in camera interview of J.C., during which he was questioned by the parties' counsel, and he answered that he wished to remain living with his aunt and uncle and to be adopted by them. The court gave due consideration to the statute regarding a child's wishes and that J.C. had reached the age of fourteen. The court noted J.C.'s maturity and understanding of the gravity of his request and that J.C. also wished to continue having a relationship with petitioner. The court also found that J.C. was flourishing in his aunt and uncle's home, that it was in his best interest to remain living there, and that J.C. deserved the permanency of being adopted by his aunt and uncle. The court denied petitioner's motion to modify disposition, concluding that petitioner failed to prove that she experienced a change in circumstances and that it was in J.C.'s best interest to be removed from his home. The court specifically noted that the evidence established that petitioner's "mental health and domestic violence issues . . . are extensive and historical and cannot be remedied or sufficiently treated in the foreseeable future and in fact she had a therapist now who testified he had not treated and is not qualified to treat those issues." The court found that petitioner had only continued to treat her depression and anxiety, conditions she had dealt with since 1993. The court entered an order granting the guardian's motion to modify disposition and thus terminated petitioner's parental rights to J.C. Petitioner appeals the April 28, 2021, order modifying disposition and terminating her parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in granting the guardian's motion to modify disposition and terminating her parental rights. According to petitioner, the circuit court's finding that she had not engaged in adequate therapy was in error. She further argues that

---

[3]The child's father voluntarily relinquished his parental rights. The permanency plan is adoption by the child's aunt and uncle.

the guardian and the DHHR ignored J.C.'s initial requests to be reunified with petitioner in 2015 but heeded J.C.'s desire to be adopted in March of 2021. Petitioner argues that she clearly had a material change in circumstances due to her continued therapy since the initial proceeding in 2014. Having reviewed the record, we find no error.

Pursuant to West Virginia Code § 49-4-606(a),

[u]pon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four of this article and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests.

The record demonstrates that petitioner could not prove that she had experienced a material change in circumstances. Subsequent to the dispositional hearing, petitioner was required to address her issues with judgment impairment, domestic violence, and general parenting. While petitioner completed parenting education courses, the record is devoid of evidence that petitioner's therapy fully addressed the issues that led to the filing of the petition in 2014. Instead, petitioner sought out a therapist unqualified in addressing abuse and neglect and family matters, and focused only on her depression, anxiety, and panic disorder—diagnoses she had since 1993. As such, petitioner's therapy sessions with her current therapist do not constitute the change in circumstances needed to warrant a modification to return her custodial rights, and the court did not err in denying her motion to modify.

Furthermore, modifying petitioner's disposition to terminate her parental rights is supported by the record and is in J.C.'s best interests. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Taking into consideration that petitioner has had seven years to find the right therapy and fully take responsibility for her severely impaired judgment and parental deficits, the court did not err in finding that petitioner was unlikely to remedy or sufficiently treat the conditions of abuse and neglect in the near future.

Moreover, J.C., now fourteen years old, requested that petitioner's parental rights be terminated. J.C. stated that he loves petitioner and wants to continue contact but wishes to be adopted by his aunt and uncle with whom he has a strong bond. J.C. testified that his adoption would provide him with permanency and prevent him from going back to court. J.C.'s therapist of seven years testified that J.C. had the maturity and understanding to make the decision to be adopted. While petitioner claims that the guardian and the DHHR disregarded J.C.'s wishes in 2015 but heeded his wishes in 2021, she fails to recognize that J.C. was only approximately eight years old in 2015 and had turned fourteen by 2021—the age at which his wishes must be considered by the court. W. Va. Code § 49-4-604(c)(6)(C) ("[T]he court shall give consideration

5

to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights"). The circuit court was mandated to consider J.C.'s wishes given his age and weighed his desires appropriately.

To the extent petitioner argues that less-restrictive alternatives to the termination of her parental rights were available, we have previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Also considering petitioner was previously granted a lesser-restrictive alternative disposition in 2015 and had seven years to address her issues, she was clearly not entitled to a disposition other than the termination of her parental rights. Additionally, termination of petitioner's parental rights is in J.C.'s best interests and will provide him with the stability and permanency he desires. Accordingly, we find no error in the circuit court's decision to modify disposition and terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 28, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton